We have four argued cases this morning. The first is No. 24-15-84, Tesla, Inc. v. Charge Fusion Technologies. Mr. Margulies. Good morning. Paul Margulies on behalf of Tesla. May it please the Court. There are two main issues for the Court to consider in this appeal. First, did the PTAB construe the two claim limitations at issue, the charging schedule limitation and the charging control limitation? We think it's clear from the final written decision that the Board did establish the boundaries and meaning of the claims in its analysis of these terms and thereby construe them. The second issue, were the PTAB's constructions erroneous? The answer here is also yes. The Board impermissibly imported limitations from the specification that come from different embodiments that are claimed and deviate from the plain meaning of the claim terms without lexicography or disclaimer. Turning to the first issue, did claim construction occur? The Board implicitly construed the claim terms. So even without an explicit construction, there are explicit statements in the final written decision that illustrate that it occurred. Is following the plain and ordinary meaning of a claim term a claim construction, even an implicit claim construction in your view? I mean, both sides said we're very comfortable with plain and ordinary meaning, so there's no need for a formal claim construction. And then I'm just wondering what if the Board, in fact, did apply the plain and ordinary meaning of the relevant claim terms? Then could it be said that there was actually an implicit claim construction as you would pose it? I think, Your Honor, if the Board had applied the plain and ordinary meaning, then we probably wouldn't be here. We don't believe that the Board did apply the plain and ordinary meaning. Even though they said they were, we believe that the final written decision illustrates that specific requirements were read into the claims from the specification in violation of that meaning. On appendix page 20 of the final written decision, the Board says, petitioner, quote, does nothing to address the requirement that it's the instructions executed by the processor that control charging and not simply the user manually initiating the charging. The Board explicitly interprets the claim this way to exclude the user manually initiating the charging, but that exclusion is nowhere in the claims. The view that the Board expressed here informed its conclusion overall in the charging schedule limitation. I thought the Board was essentially relying on this discussion in the claim about instructions when executed by the processing devices resulting in the increasing of the charge. And so, therefore, the Board necessarily is saying it's the execution of the instructions that's causing the increase in the charge. So, Your Honor, respectfully, what the Board says is that it's the execution of instructions that control vehicle charging in accordance with the charging schedule. We don't dispute that it has to be instructions. We're all calling it the charging control limitation, right? We are because the Board did, Your Honor. Well, then, that's what's happening here about increasing the charge. So, what is wrong with the view of the claim that there are these instructions? They're stored in a non-transitory memory device, and then the processor is going to execute those instructions. And when the processor does execute the instructions, a whole bunch of different actions occur, and they're recited in this claim. Receiving information, computing a charging schedule, displaying the charging status of the electric vehicle, and also increasing the level of charge of the battery. I mean, that's pretty standard computer processing type claim where you execute the instructions, lots of things occur. Right, and that is explicit claim language, and that is not what we're disputing. What we're disputing is when the Board read in a requirement that in that particular claim step that there be control of the charging, and that the charging be initiated by that control. Initiating and control are not in the claim. If I understand, I mean, there's a fine line between claim construction and applying plain and ordinary meaning sometimes. But as I understand it, your contention is that Cato, prior art Cato, creates a charging schedule, and that the creation of that charging schedule satisfies both of the limitations that we're talking about here now, correct? The creation and the use of the charging schedule.  Correct. So you're saying that to construe the second limitation, that is increasing the charge level, which happens any time you start charging, that that is done in Cato because it sets a schedule, and as soon as the processor starts the schedule, instructions start the schedule, create the schedule, and if you follow the schedule, you increase the charge. You increase the charge. Is that a fair statement of what you're arguing? So there is one nuance, your honor. In general, yes, but I just want to be clear that in Cato, our position is that it is increasing the charge once the user plugs in the charger, and increasing doesn't require initiating. It doesn't require controlling, and we're talking about electric vehicles here, not pumping gas. So the claim has an electrical charging system. I confess I'm confused by what you're saying. It seems to me that the claim requires instructions, and the instructions are, as I understood your argument, is creating the charging schedule, and following the charging schedule charges the battery, and that satisfies the limitation. Correct. That I agree with, yes. And is your theory that somehow the board is saying that there has to be a direct instruction to start charging, as opposed to creating a schedule? Is that the claim limitation difference that you see there? We do, your honor, that the board is requiring not just some sort of use of the schedule, but actually initiating the charge via the schedule. That is the fundamental difference. The board took the position that the claims require charging be started only after the vehicle is plugged in, based on some examples in the specification. It's sort of like a direct versus indirect issue, right? Whether the instructions have to directly start the charge, or they can indirectly start the charge by creating a schedule which, if followed, creates a charge. Even more so, your honor, I would say that the claim doesn't actually speak to this point, that as long as the charging is occurring, increasing charging, occurs under the auspices of the claimed instructions, then that fulfills the claim limitation. Yeah, but it's still defined by executing instructions that result in the increasing of the charge. So you can't de-link those two passages in the claim like you want to. So, I mean, it seems like you're saying that this increasing step can be a human actor that plugs in the car into the charging station, and that'll satisfy this claim. And it's just unclear to me from the claim, if it's really structured in that way, that this claim is simply calling for a processor with instructions to compute a charging schedule, and then a human being to go run off with that charging schedule, and then go to a charging station, and then follow the recipe of the charging schedule by plugging in the car at the time that the charging schedule on a piece of paper says it's time to charge the car. So, a few points, your honor, in response. I mean, the whole patent specification is about something called intelligent charging. It's all about a computerized means of trying to choose, you know, based on computer instructions, exactly when is the right time to begin charging and have the charging occur, and in other time windows, not have any charging happening, even though the whole time the car is literally plugged into a charging station. Well, your honor, first I'd point out there's a bit of a delta between the specification and the claims. I think the specification goes back to 2009. Maybe. That depends. That's your conclusion. Well, at least different in time, 2009 versus 2021 when the patent issued, but in any event, we are not disagreeing that it has to be instructions that are involved in increasing, but what we're saying is... Do you ever provide a claim construction for the term result in? I don't think in your petition or in your reply or during your hearing before the board or your briefs to us, you ever say, oh, result in can actually be something quite indirect where something happens, instructions executed, and then through a chain of events after the execution of those instructions, eventually there will be a result, and that eventual ultimate result will be an increase in charge of a battery. I don't think I've seen you make that argument at any point along the way, but there are definitions for result in that just pretty clearly say it's the same thing as cause. Cause and effect. You do execute instructions, and that causes an increase in charge. So, Your Honor, again, we don't disagree with that read of the claim, but I do think the claim is structured differently than your view, respectfully. In terms of this is a claim that is directed to a driver who is on a road trip, essentially, going from stop to stop, charger to charger between an origin and a destination. That is different than the example in the specification that the board relied on, where a car is parked for eight hours and the schedule chooses which intervals charge will occur. The charging schedule is a planned time when the car arrives at the charging station. It's not an actual trigger to initiate charging, and the word initiate is simply not in the claims. We agree that the processor has to be involved in increasing, in accordance with the charging schedule, a level of charge. What you're saying is that the processor sets the schedule and following the schedule increases the charge. I'm sorry, say that again, Your Honor. You're saying that the processor creates the schedule and that following the schedule results in charging, increasing the charge. Yes. Right, and the question is whether that satisfies the claim limitation. That is the question, Your Honor, but I think it's also a question of whether the board applied a claim construction here. Right, and you're saying it's the human actor that would be following the charging schedule. It would be a human being saying, oh, I have a charging schedule printout here, and it says I need to begin charging at 2 p.m., so I'm going to sit here and wait until 2 p.m., and then I'm going to plug in my car into this charging station. And then I see my charging schedule printout says stop charging at 3.30 p.m., so I'll wait here until 3.30 p.m., and then I'll de-plug my car. That seems to be the way you understand this claim. So, Your Honor, I disagree with that because all our view is is that increasing in accordance with the charging schedule is a minimum requirement. The claim is broad, and the specification talks about an electrical charging system being operative to conduct, manage, schedule, and or otherwise facilitate the charging of one or more vehicles. When you plug in your car into an electric charger, there is a processor doing something. It says conduct right there, so it's the instructions that are conducting the charging. They are, but why can't a human plug in? That is the issue. Following the instruction. Well, does the human have to follow the instruction? I would submit he does not, but in any event, I believe, Your Honor... I have to follow the instruction? As long as the... I thought the whole idea here was that the processor creates an instruction, that is a schedule, and the human being follows the instruction, the charging starts, and that is an instruction that results in increasing the charge. No? I believe the processor has to follow the schedule. Yes? Correct, Your Honor, but the processor is the one that has to follow the schedule, according to the claim language. The processor has to follow instructions that increase in accordance with the charging schedule. Whether a human can be involved, we can look to that. What does that mean, the processor has to follow the charging schedule? I mean, I agree with you, but now I'm confused with how that fits with your theory of the case. So, we read the claim, I think as you do, Your Honor, that the non-transitory memory storing instructions that are executed result in increasing. So, why can't a human be involved? Yes, the processor has to be involved, but also a human can be involved, and we cite to the CollegeNet case in our brief. A human can be involved in a comprising claim without undermining the term automatically. How is the processor involved? I mean, you're saying we both agree that the processor is involved. I certainly believe that, but I don't understand your conception of how the processor is involved. So, in the disclosure of Cato, the machine... No, no, no, not Cato, I mean the claim. In the claim, the processor runs software that increases in accordance with the charging schedule. Can the processor take into account time of day rates? It can, and that is discussed in the specification. So, that's suggesting a scheduled start time? I'm sorry, say that again, Your Honor. Suggests a scheduled start time, doesn't it? If the processor is taking into account time of day rates, isn't that suggesting a scheduled start time? I believe that's right. So, the processor does more than just sit there, right? Absolutely, Your Honor. I see I'm way past my time. Unless there are any further questions, I will cede. All right, we'll give you two minutes for a moment. May it please the Court. Counsel, I'd like to go right to some of the questions. First of all, what the claim requires is that there's a non-transitory memory and processors that execute on that memory and do something. And as Your Honor picked up on, one of the things it does is that it increases the level of charge in the battery. Well, but if you look at the claim on A123, the formatting on the back and the inside, it seems to me incorrect. But if you look at the actual claim, there's a computing step, right? Yes. And this increasing the charge is not part of the computing step. It doesn't have to compute to increase the charge. But it has to issue, I'm sorry. Correct?  So we're not dealing with the computing step. We're dealing with the step of instructions that result in increasing the charge, right? Correct, Your Honor. Okay, so why doesn't the creation of the processor creating a set of instructions under Cato satisfy that? Well, for a couple of reasons. First of all, Cato doesn't really create a charging schedule. Cato is a travel system for planning. It plans stops and starts. And as the board found, it provides an available window for charging. And I think one of the most critical sentences in Cato, and the board actually picked up on it in their decision at page 15 of the appendix, is that Cato further explains when the time which can be spent at the planned charging point is shorter than the time required for charging, although the battery remaining amount, SOC, does not reach 100%, the vehicle goes to the next destination. That's a plan. That's a route planning. That's not Cato's. But Cato does talk about an arrival time and a departure time. It does. And it seems to line up the idea that that's when you would begin your charge and that's when you would end your charge. And you're absolutely correct, Your Honor. So let's just follow back to Judge Dyke's more specific question. And that question just isolated down to the so-called charging control limitation, not the charging schedule limitation, which is what you're talking about now.  Yeah, sure. Let's assume for purposes of Judge Dyke's question that the board was wrong about the charging schedule limitation. Okay? So that's your first argument why Cato doesn't have a charging control limitation. It's based on your view that Cato likewise doesn't have a charging schedule limitation. But put that to the side. Let's assume that Cato does have a charging schedule. All right? Now why is it, in your view, that somehow Cato still lacks the charging control limitation? Because the claim about executing instructions that result in the increase of charge of the battery in accordance with the charging schedule. Correct. Correct. Because the claim requires, I think it's 1M, as set out by Tesla, that the battery level increases as a result of instructions from the processor. Tesla has this argument that somehow it requires that you plug in first. First of all, it's an electrical charging system. So there has to be access to electricity first. I don't understand. Under the preamble, this is an electric charging system. The theory is pretty simple. There's a charging schedule in Cato. And if you follow the charging schedule, you charge the car. And if you charge the car, you increase the charge. Well, that's a little bit, I think, to put a little bit of a finer point on it, Your Honor, what Cato says is that you're going to go to a series of stops. Okay? And it doesn't set a scheduled start time. It just says once this trip starts, you're going to go to the first stop. You're back to the issue that Judge Chen asked you to assume that you lose on. There is a charging schedule created in Cato. There is a charging schedule, but the board found that it didn't include a scheduled start time. No, but we're not talking about start time now. We're talking about increasing. But the claim requires that the charging schedule. We're trying to take that away from you. I know. I understand that. I probably should just move off of that. So charging schedule, Cato has it. Start time, Cato has it. Stop time, Cato has it. So put that to the side. Now we're reducing the case down to the increasing the charge in accordance with the charging schedule. I'm going to hit one point, and then I'll go to the question that you have. Well, you use your time how you want. I understand. That's the only thing on my mind. That's the only thing I can think about. Anything else you say will just go off into the air. Understood. History of my life. Cato doesn't have a scheduled stop time. It sets a duration of charge, which ultimately became a scheduled start time. But let's talk about the control limitation. Let's talk about what we want to talk about. I'm trying to answer. I think this is what you're asking me, right? That is on the assumption that Judge Chen has asked you to follow, that there is a charging schedule set in Cato. Why doesn't following the charging schedule result in increasing the charge? Because it reads out the limitation that requires the processor to increase the charge, issue commands to increase. It takes that element out. Why? I mean, the processor sets the schedule. Following the schedule increases the charge. What's the matter with that? But Cato doesn't instruct to increase the charge. The only thing that happens in Cato is that the car gets plugged in. And the patent at page 109 in element one says that this is to overcome the prior art systems where plugging and unplugging, but overcome the resistance of users plugging and unplugging a car. It's an intelligent system. And so once electricity is available, they say one of the arguments is that this excludes charging that begins immediately when a user plugs in the vehicle. What is it that's missing from Cato that if it contained it would disclose the limitation? What's missing is what the board described at paragraph 15, is that the processor executes instructions that control vehicle charging in accordance with that schedule. That's what's missing. That's the plain language that the board used. And if Cato had that, then it would read all the limitations. If Cato had it, it would read all the limitations. I mean, we wouldn't be here, right? If Cato had, I mean, you could, I guess. I mean, I filed motions to change the facts. I've never won one because that's not in Cato. And this notion that somehow that the board's engaged in some super secret claim construction that precludes charging beginning immediately upon getting to the charge station, that's not accurate. If the microprocessor is executing instructions that say begin to charge immediately, then the claim limitation's met. If the microprocessor says once you've plugged in, wait until the price of electricity comes down or wait until something else happens. We're not talking about that. That's not part of the claim here, is waiting, is charging at a particular time when the cost of electricity might be less. That's not part of this claim. Right? It's not. It's not part. But it is, Your Honor. The processor has to increase the level of charge in the body in accordance with charge. It will increase the level of charge any time you start charging, right? But that's not the processor doing it. No, I disagree with that. That's not a processor doing it. That's just somebody plugging in the car. And that's what the board had a problem with. What if the user gets to the next stop and decides not to plug the car in? And Cato, there's nothing in Cato that instructs that the CPU does anything to issue instructions that when executed by the resultant. The CPU in Cato creates a charging schedule and tells you to follow it. If you follow it, you increase the charge. No, no, no. That's not what Cato does. And that's what the board found in Cato. Under the substantial evidence test, that's not what the board found. The board found that Cato taught a window or an availability for the opportunity to charge. It also taught the CPU did say that the go from 0 to 100 will take 10 minutes, 2 minutes, some amount of time. And so under Cato, what the board found is that it wasn't the microprocessor that was computing. Well, we computed duration, but it wouldn't compute a scheduled start time. Because the scheduled start time would be when you got there. And it doesn't compute an indication of a scheduled stop time. Cato didn't teach any of that stuff. And the board looked at paragraphs 53 through 55, which were the paragraphs upon which Tesla relied and found that there was nothing in there that taught the processor increasing the level of charge in the battery. And the board found, and I think correctly so, that simply plugging it in isn't enough. It doesn't preclude plugging it in and having it start immediately. But this notion that somehow the board engaged in a claim construction that eliminated charging immediately, it did no such thing. It read all the claim limitations, including 1C and the other elements, and indicated that in order for the charge to increase, it had to be done so as a result of an instruction from the processor. And just plugging it in didn't meet that claim limitation. I mean, we're up here on two issues. And one was whether or not the board engaged in proper claim construction. The board planned an ordinary meeting and set forth the paragraph at page 15. They filed the right law. There was no dispute below between the parties about the ordinary meeting of these claim terms. None. And so the board, following the law of this circuit, indicated that they were only to construe terms that are in dispute and only to the extent necessary to resolve the controversy. And the board did do that. The planned ordinary meeting is in there. And then the board made findings of fact that were straightforward. They indicated that at page 19, absent pervasive explanation and evidence from petitioner, the preponderance of the evidence before us does not support petitioner's assertion that the beginning of an available time window for charging is a scheduled start time or that the end of that window is a scheduled stop time for charging. At this point, we note again the petitioner relies on the express teachings of Cato. The petition does not assert it would have been obvious to employ a scheduled start time based on any modification to Cato's teachings. Our decision is limited to the particular basis for the challenge advanced by the petitioner. They made findings of fact on the review of Cato. They executed and used the proper claim construction. With respect to the charging control limitation, we see no explanation or even allegation that Cato teaches instructions that when executed by one or more processing devices results in increasing in accordance with the charging schedule a level of charge of the battery. Because remember, Your Honor, it's not just arriving at the charging station that goes into this intelligence system. It are other user parameters that are provided that are talked about in the specification and get to one of the ones that they talked about if when they get to the scheduled stop time or the scheduled start time as calculated by the processor, it may or may not start charging at that point under the intelligence system as claimed. There's nothing in Cato at all that teaches anything whatsoever about starting to charge the minute you get to a charging station. And so, Your Honor, I respectfully disagree that Cato teaches a charging schedule that's been mapped out. Cato says you go from A to B. Does Cato teach a scheduled start time? If you ask Judge Dyke, he'd say yes. But if you ask me, I don't think so. I don't think it does. I know how Judge Dyke is. No, I don't think it does teach a scheduled start time. Cato provides a trip planning software that says when you get to these places, because you're going to go to the movies, you're going to go to the museum, you're going to go to any one of a number of places, that when you get there, you can begin to charge. And so there's no scheduled start time. A scheduled start time would be you've got to drive to 2 o'clock, 2.15, and then start to charge. So Cato, I understand what Judge Dyke is saying. It says go to these places, and you understand you're going to start charging when you get to those places, and that's a charging schedule, and when you charge, you've done both claim elements. But I disagree. I think it's an overly broad reading of Cato, and I think the board recognized that Cato didn't teach that. It just didn't teach that. So, no. Anything else? Okay, thank you. I'm sorry, I do want to go through. They claim that they're – I've got 54 seconds. They claim that there are four things wrong with the court's claims instruction. One, that it required charging to be started after the vehicle is plugged in. That's not true. Two, it requires charging to start increasing the battery in accordance with the instructions. They claim it excludes charging that begins immediately when the user plugs in the vehicle. It does no such thing. It requires initiating vehicle charging to be actively controlled. And that's just – it's a passive system. It doesn't do that. And it excludes the user manually starting and stopping the charge, which is nothing more than the prior art over which we distinguished, and has nothing to do with the execution of the processor to meet that claim element. And the last thing is that they provided a claim instruction for both of the limitations, but neither one of them solves their problem for the first time on appeal because neither one of them addressed the fact that it's a processor issuing instructions that results in the indicated elements. Okay, we're out of time. Thank you. Mr. Margulis, you have two minutes. Thank you, Your Honor. First, I'll just say if we're at the point in here where we're disputing what Cato discloses, a remand would be appropriate for the board to consider that in the first instance. Moving back to the charging control limitation, we said in our reply brief that it was never disputed by ChargeFusion until the final written decision came out. In other words, there was no dispute that Cato disclosed that. I didn't hear any disagreement, but that was something that came out in the board's final written decision only. Looking back at the processor resulting in increasing in accordance with the charging schedule, again, just to clarify, our position is the claim language does not preclude human involvement to plug in. Nothing in the claim says that a human can't be involved in plugging and physically connecting or electrically connecting from being involved in that charging process. Under the specification, there has to be some plug-in. I mean, it's not an automatic plug-in. Right, either physical or wireless, but there has to be an electrical connection of some sort. And it's the board's construction, their implicit construction, but their construction that has read in that limitation into the claim where increasing just means the charging has to occur, not that it has to start. What if I wanted to bake a cake, and then I go to ChatGPT and I say, can you give me a recipe for a carrot cake? And then ChatGPT gives me the recipe. And then I look at that recipe, and then I go make the carrot cake based on that recipe. Is it fair to say that ChatGPT caused the creation of that cake? I think ChatGPT put out a recipe of the cake, but I'm not sure I'm following your analogy. Well, who caused the creation of the cake? Me or ChatGPT? You prompted ChatGPT. In the case of the claim, I would say that the charging schedule was computed by the processor, and the charge, even if physically connected by the human, is controlled by the processor as well. How is it controlled by the processor? Again, Your Honor, this sounds like a question about Cato itself, but we're talking about the claim, or at least this example. The processor requires, executes instructions that increase the charge, not that they have to start the increasing the charge, they just have to be involved in the increasing the charge. It doesn't say control the charge. It does not say control, it does not say initiate, and that is our position. I see I'm over my time again. If there are no other questions, I will. Do you have another question? All right. Thank you.